## ELECTROLIBRATION Co. *v.* JACKSON.

*(Circuit Court, W. D. Tennessee.* September 20, 1892.)

### No. 444.

1. EQUITY PRACTICE—DEMURRER—SETTING FOR ARGUMENT.
   The failure of the plaintiff to set down a demurrer for argument on the rule day, when the same is filed, or on the next succeeding rule day, (according to equity rule 38,) it having been the practice of the circuit court for the western district of Tennessee to treat all days in term time as rule days, is not, in that court, sufficient ground for dismissing the bill.

2. PATENTS—PLEADING—SUFFICIENCY OF BILL—DESCRIPTION OF PATENT.
   A bill which describes an invention as "a certain new and useful apparatus, fully described in the —— letters patent hereinafter mentioned and named therein, 'a new and useful improvement in thermo-electric batteries,'" and then refers to the letters patent by their date only, without giving the number, and without referring to any record in the patent office, by book and page, does not describe the invention with sufficient particularity. And the fact that the letters patent were filed on a motion for preliminary injunction, and are before the court, will not cure the defect, since they are not a part of the record. *Wise* v. *Railroad Co.,* 33 Fed. Rep. 277, and *Post* v. *Hardware Co.,* 25 Fed. Rep. 905, approved.

3. EQUITY PLEADING—SUFFICIENCY OF BILL—EXHIBITS.
   The rule that a bill in equity should contain a clear and explicit description, sufficient to give the defendant notice of the subject-matter of the complaint against him, is not abrogated by equity rule 26, which forbids unnecessary recitals of documents; and, if exhibits are attached, the bill should contain explicit reference to them.

In Equity. Suit by the Electrolibration Company against John A. Jackson for infringement of patent. On demurrer to the bill. Sustained.

*B. M. Estes,* for complainant.
*Cooper & Pierson,* for defendant.

HAMMOND, District Judge. The demurrer, and the arguments upon it, present questions of technical nicety not often raised in these days of loose practice. We have a very elaborate code of some 90 or more rules of equity practice, promulgated by the supreme court under its powers in that behalf, intended to regulate with uniformity the practice in all the equity courts of the United States. Except in a general way, very little attention has been paid to them, and I doubt if any case can be found in any of the courts where they have been scrupulously and exactly enforced, or where they have been even nearly followed. Be-

sides, we mix our state and federal practice almost indistinguishably, and quite unconsciously. The defendant here insists that rule 38 has not been complied with, and that this bill should be now dismissed for such noncompliance. The rule requires that, if the plaintiff shall not set down a demurrer for argument on the rule day when the same is filed, or on the next succeeding rule day, he 'shall be deemed to admit the truth and sufficiency thereof, and the bill be dismissed of course, unless a judge shall enlarge the time. Jones, Rules, 97. Taken in connection with rule 33, the evident purpose was to speed the cause during vacation. Id. rule 94. For I take it that the reference to rule days generally implies that the proceeding is necessary on a rule day, because the court is not in session, and it cannot be otherwise taken before the clerk or master upon a rule day held for that purpose. Our state practice makes every day in term time a rule day, and our lawyers have come to so treat it in this court as well, and I think properly; for certainly whatever may be done before the clerk or master on a rule day would be as well done before the court itself, if in session. And our court is so continuously in session, owing to the constant presence of one of the judges, that the practice of rule day orders has fallen into desuetude, very much as Mr. Gibson describes in relation to our state practice also. Gibs. Suits Ch. § 1007, note.

Here the plaintiff seeks to avoid the effect of rule 38 by stating that he applied to the deputy clerk to know if there was kept an order book, as required by equity rule 4, Jones, Rules, 69, and was told there was none. But on inquiry of the clerk himself we find there is an order book, but not an entry has been made in it for more than seven years. This could do the plaintiff no good, because it does not appear that he applied to the clerk to enter an order setting the demurrer down for argument upon a rule day, and could not comply with the rule, because there was not an order book, under rule 4, but only that since the application to dismiss was made for noncompliance with rule 38 he has discovered that the order book was not kept. Obviously, if the fact were so, it would not avail him to escape the penalty of the rule, because he made no attempt to comply which failed for want of a book; and, if he had, the book could have been immediately supplied for the occasion. But I think the penalty has not been incurred for the other reason. Theoretically, under rule 1, Jones, Rules, 67, the courts of equity "shall be deemed always open," etc. In fact, the court is nearly always open in this district, and the habit is quite universal to do in open court what these rules allow to be done on rule days, and hence the order book has been quite useless. Owing to the summer vacation, and prolonged sickness in the family of the judge, the argument of this demurrer has been delayed, no doubt, and the court should exercise its power, under rule 38, to enlarge the time if necessary. But this need not be done, because the practice has been followed which generally obtains, and the argument has been had here and now. No formal order in writing upon the minutes is necessary to set the demurrer down for argument, though that would be a better practice, no doubt, as it would

be to set an equity case down for hearing formally, which is rarely done at all. When the case is ready for hearing, or the demurrer or plea is ready to be argued, the parties appear, informally, in court, and proceed with the matter, no attention being paid to a formal entry setting the hearing down in writing on the minutes, order book, or docket. That practice, regular and proper as it may be, does not and has never obtained among us. The minutes show that the demurrer or plea was argued, or the hearing finally had, as the case may be, and by necessary implication the proper setting down is and may be assumed, as it will be in this case; and the application to dismiss the bill for noncompliance with rule 38 is refused.

The second ground of demurrer, that the bill does not allege that the plaintiff has been in the undisputed possession of the invention for some length of time, is overruled for the same reasons given upon the application for a preliminary injunction, when the point was taken and not sustained; and so the third ground of demurrer, that the bill is without equity, is overruled for the reasons also stated upon the application for preliminary injunction, when that matter was also fully argued and determined.

This leaves the first ground of demurrer, which I think is well taken, but it is easily cured by an amendment, to which the plaintiff is entitled, as a matter of right, under our statutes, and it has leave to amend in that regard. The point is that the bill has not described the invention with that certainty which good pleading requires to put the defendant upon notice of that which is complained against him. The bill is said to follow the form laid down in Walk. Pat., and to have been drawn by an expert patent lawyer; but, while this may be so, it cannot prevail against the adjudication in *Wise* v. *Railroad Co.*, 33 Fed Rep. 277, directly in point upon this question, which decision is, in my judgment, well grounded upon principle and authority, as is *Post* v. *Hardware Co.*, 25 Fed. Rep. 905. The bill in this case thus describes the invention which is the subject of the controversy,—"a certain new and useful apparatus, fully described in the specifications of the letters patent hereinafter mentioned, and named therein 'a new and useful improvement in thermo-electric batteries.'" It then states the date of the letters patent to be March 31, 1891, says they were signed and sealed by the secretary of the interior, and countersigned by the commissioner of patents, and granted the exclusive right to make, use, etc., for 17 years. It does not even give the number, nor refer to any record in the patent office, by book and page, to which the defendant might resort for fuller information. There might be any number of patents of that date for improvements in thermo-electric batteries, and even any number granted to Webb, described as the original patentee.. It is perfectly plain that defendant, under such general allegation, would have to search the patent records from beginning to end, to be sure that he had all they disclose about improvements in thermo-electric batteries of that date to Webb. But the defendant is not required to go to the patent office at all, and should not be, for this fuller information. The bill should dis-

close it. It is not required that at his own expense he shall search the records at Washington for the description of the plaintiff's invention, for an infringement of which the plaintiff is suing him. It would be a wrong to him if this were so. Good pleading requires that the bill, on the face of it, should give him this notice with reasonable fullness, without any trouble or expense to him for searching records to supply the deficiencies of description and information. This is the cardinal rule of pleading, at law and in equity, and it is plain that this description does not, without such labor and expense, give the defendant any reasonable notice of the character and nature of the plaintiff's invention or improvements.

The demurrer says that the bill should make "profert" of the letters patent, and the plaintiff replies that "profert" is unknown to equity pleadings. Technically, this may be so, but the equivalent of profert is known; and whenever the law pleading must make profert, the equity pleading must allege and prove with fullness enough to give all the benefit that profert would give, and under a rule the production of the document would be compelled. But this is beside the question, in my judgment. It is not a question of profert, or of the right of the plaintiff to see the document at all, but only one of fullness in pleading. Neither is it necessary to violate the rule of the ordinance in chancery against "stuffing" a bill with the writings *in hæc verba*, invoked by counsel. Story, Eq. Pl. § 266; Equity Rule 26. While there should be no verbosity, there should be clear, explicit, and sufficient description to give the defendant notice of the subject-matter of the complaint. Rule 26 had not abrogated this requirement.

At to exhibits, they are a mere matter of indulgence. In good pleading, strictly, the bill should give the requisite full information of itself; but indulgence to loose practice and convenience has allowed exhibits with explicit reference to them in the bill, and they may be referred to in aid of the bill; but they may not be omitted altogether, as here, and the pleader content himself with a naked reference by its date to some document of record in a far-away place. In *Harvey* v. *Kelly*, 41 Miss 490, 493, the late Chancellor ELLETT of this city, who was an elegant pleader of the old school, well versed in the law of good pleading, under both ancient and modern forms, says:

"It is indeed admissible to a certain extent, in pleading in chancery, to file written evidence as exhibits, and to refer to them as a part of the bill or answer; but good pleading requires that everything that is material to the case should be set forth in the pleading itself by proper averments. This may be done in general terms, and the exhibit may be referred to for greater certainty as to particular details, but the pleading ought to contain the substance of the case."

No authority says that an indefinite, general, and wholly undefined statement of the invention or other thing in controversy, without exhibiting the document describing it, shall, by mere reference to the document, stand for a specific statement or description in the bill; or that a general statement, accompanied by an exhibit of the document, or a

copy of it, meets the rule of good pleading which we have above stated, with the reasons for its requirement. In Daniell, Ch. Pr., it is said that "it is usual to refer to the instrument in some such words as the following, viz., 'as by the said indenture, when produced, will appear,' and the effect is to make the whole document a part of the record." 1 Daniell, Ch. Pr. (5th Ed.) 367; Id. (1st Ed.) 476. But this does not say that the bill in such a case shall not, by proper allegation, inform the defendant of the nature of the document, but is a rule to give the plaintiff the benefit of the averring part without reciting it *in hæc verba,* or exhibiting it, as the author says; and in the very next text he condemns the inconvenience of this indulgence, and says: "It is always necessary in drawing bills to state the case of the plaintiff clearly, though succinctly, upon the record; and, in doing this, care should be taken to set out precisely those deeds which are relied upon, and those parts of the deeds which are most important to the case." 1 Daniell, Ch. Pr. (5th Ed.) 368; Id. (1st Ed.) 476.

It is true that on the motion for injunction the letters patent were filed as evidence, and the document is before us, among the papers in the case. But it is not a part of the record. Not even the loose reference mentioned above is contained in this bill to make it a part of the pleading, which alone is the technical record. Reference to it is gained by implication only from the fact that its existence is stated. It is not pleaded at all. So found in the papers, it cannot aid this pleading.

Demurrer sustained.